Clinton SMITH, Appellant

v.

Constance HORNER, Director, Office of Personnel Management.

No. 87–5231.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 4, 1988.

Decided May 20, 1988.

As Amended June 21, 1988.

Patricia A. McCoy, with whom Joseph M. Sellers and Marc Gary, Washington, D.C., were on the brief, for appellant.

William J. Dempster, Asst. U.S. Atty., with whom Joseph E. diGenova,[*] John D. Bates and Craig R. Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee. Michael J. Ryan and Deborah A. Robinson, Asst. U.S. Attys., Washington, D.C., also entered appearances for appellee.

Before MIKVA, RUTH BADER GINSBURG, and SILBERMAN, Circuit Judges.

Opinion PER CURIAM.

Concurring Opinion filed by Circuit Judge SILBERMAN.

PER CURIAM:

For the past nine years, appellant Clinton Smith, a black career civil servant, has sought disability benefits from his employer, the Office of Personnel Management ("OPM"). The Federal Circuit affirmed OPM's denial of disability benefits pursuant to direct, if limited, review in January 1986. Smith now appeals the district court's dismissal of a separate Title VII claim based on his contention that OPM's denial of benefits was discriminatorily motivated. We affirm the district court's judgment dismissing the Title VII action. We do so on the ground that appellant waived his Title VII claim.

I.

Smith, whose service in the federal government stretched from 1963 until his

---

* United States Attorney at the time the brief was filed.

retirement in 1982, held a variety of jobs with the Civil Service Commission (later OPM). During the 1970s he was the Director of CSC's Equal Employment Opportunity Office and Chairman of the Interagency Advisory Group for Equal Employment Opportunity. In March 1979, because of failing health, he applied for disability benefits. Although OPM found Smith had hypertension, it denied him benefits because it concluded Smith was not disabled from performing his duties. The Merit Systems Protection Board ("MSPB") affirmed OPM's determination on administrative appeal, and from there Smith appealed to the Federal Circuit, which has exclusive jurisdiction to review final decisions of the MSPB. 5 U.S.C. § 7703(b)(1) (1982). Our sister circuit held that it nevertheless lacked jurisdiction to review Smith's claim because of 5 U.S.C. § 8347(c), which states that "decisions of [OPM concerning disability and dependency] are final and conclusive and are not subject to review." *Smith v. OPM*, No. 83–700 (Fed. Cir. October 20, 1983) (unreported decision; tabulated at 727 F.2d 1117). The Supreme Court granted Smith's petition for certiorari in light of its opinion in *Lindahl v. OPM*, 470 U.S. 768, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985), and remanded to the Federal Circuit to determine whether, quite apart from the facts of Smith's disability claim, there were other errors, which, under *Lindahl*, the Federal Circuit had jurisdiction to review. 470 U.S. 1079, 105 S.Ct. 1834, 85 L.Ed.2d 135 (1985). In other words, it was open to the Federal Circuit to hear and decide

"whether 'there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error going to the heart of the administrative determination.'" *Lindahl*, 470 U.S. at 791, 105 S.Ct. at 1633 (quoting *Scroggins v. United States*, 397 F.2d 295, 297, 184 Ct.Cl. 530, *cert. denied*, 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968)) (internal quotes omitted).

Smith had claimed before the MSPB, *inter alia*, that imposing the burden of persuasion on him—to show medical grounds for disability—discriminated against him because of his race. *Smith v. OPM*, 12 M.S.P.B. 40, 44, 13 M.S.P.R. 456, 460 (1982). And after OPM denied his disability claim in 1980, he filed an administrative complaint with OPM, asserting that the denial of benefits was attributable to retaliation against him for his vigorous enforcement of the civil rights laws. OPM declined to proceed with his retaliation claim in early 1984; and in April of that year, Smith filed the action upon which this appeal is based in federal district court, alleging that OPM's denial of his disability claim was discriminatory retaliation under Title VII, Section 704(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a) (1982).[1]

In 1985, before the Federal Circuit considered, on remand from the Supreme Court, Smith's appeal from denial of his disability claim, the Clerk of that court by letter[2] notified Smith of the Federal Circuit's then recent decision in *Williams v. Department of the Army*, 715 F.2d 1485 (Fed. Cir.1983), which held the Federal Cir-

---

**1.** Section 2000e–3(a) provides, in part:
It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

**2.** The text of the letter, as reproduced in Brief for Appellee at 9, was as follows:
In *Williams v. Department of the Army*, 715 F.2d 1485 (Fed. Cir.1983) this Court held that when a claim of discrimination is present, jurisdiction is vested only in the U.S. District Courts.

If you complete and file the enclosed form indicating that you have abandoned all claims of discrimination, the appeal will proceed in this court on such non-discrimination claims as may be present.
A claim of "discrimination" referred to in the enclosed form means a claim that the adverse action complained of was based on age, sex, race, religion, national origin, or handicap. If you do not abandon the claim of discrimination, you may request the court to transfer the case to a U.S. District Court pursuant to 28 U.S.C. § 1631.
If you do not file the enclosed form within 15 days of the above date, the appeal will be dismissed.

cuit lacked subject matter jurisdiction to review an appeal from the MSPB if that appeal was accompanied by a discrimination claim. Notwithstanding his action previously filed in the district court, Smith responded that

> [t]his appeal involves no claim of discrimination and no claim of discrimination was raised before the agency or before the Merit Systems Protection Board.... I have not filed a suit in any other court challenging the decision of the Merit Systems Protection Board challenged on this appeal.

Brief for Appellee at 9–10. The Federal Circuit then reviewed Smith's appeal under the *Lindahl* standard and affirmed the MSPB. *Smith v. OPM*, No. 83–700 (Fed. Cir. Jan. 27, 1986) (unreported decision; tabulated at 790 F.2d 91).

In a series of opinions giving rise to this appeal, the district court held that, although Smith was entitled to litigate his Title VII retaliation claim in the district court, *Smith v. Horner*, 645 F.Supp. 97, 98 (D.D.C.1986), there was ultimately no relief available to him. The district court concluded that, even in the context of a Title VII suit, it was precluded from disturbing the underlying factual determinations of Smith's disability claim made by OPM because of section 8347(c). *Id.* at 100. If it could not grant disability benefits directly, the court reasoned, Smith's action under Title VII no longer represented a true case or controversy—a core requirement of Article III. Smith's Title VII claim was thus dismissed by the district court for lack of jurisdiction. *Smith v. Horner*, 664 F.Supp. 576, 577 (D.D.C.1987).

## II.

■ We disagree with the district court's ruling that it lacked subject matter jurisdiction. That court confused or blended two discrete questions: (1) Did Smith tender a claim arising under a federal law over which the court has authority; (2) Was Smith entitled to any relief on the claim he presented. It remains the approach we are instructed to take that, except for claims "wholly insubstantial or frivolous," a feder-

al court has subject matter jurisdiction when

> the right of the [plaintiff] to recover under [the] complaint will be sustained if the ... laws of the United States are given one construction and will be defeated if they are given another.

*Wheeldin v. Wheeler*, 373 U.S. 647, 649, 83 S.Ct. 1441, 1444, 10 L.Ed.2d 605 (1963) (quoting *Bell v. Hood*, 327 U.S. 678, 685, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946)). Smith's Title VII action fits that description. The district court had subject matter jurisdiction over it.

We do not reach the question of the impact section 8347(c) would have should a litigant in Smith's position follow the teachings of *Williams, i.e.*, the direction to proceed in district court and district court only when a claim of discrimination is present. Smith failed to heed that direction, brought home to him effectively in the letter from the Federal Circuit. His Title VII action must be turned away therefore, not for want of "subject matter" jurisdiction, but because he waived his right to proceed under that Act when he declined the transfer offered by the Federal Circuit.

## III.

■ The government has consistently urged that Smith's appeal should be rejected because he waived his Title VII claim. We agree and rest our affirmance on the ground that appellant relinquished that cause of action when he responded to the Federal Circuit's Clerk's letter that he was not also asserting a discrimination claim.

The Federal Circuit in *Williams* adopted an eminently sensible approach to the mixed claim problem. If an appellant is simultaneously asserting both a Title VII claim as well as an appeal to that Circuit challenging an MSPB determination, the Federal Circuit will decline jurisdiction. Since a federal district court may hear both claims, *see Hayes v. United States Gov't Printing Office*, 684 F.2d 137, 140–41 (D.C. Cir.1982), but the Federal Circuit may not, it makes little sense for the Federal Circuit to entertain only half of the claim. We are decidedly unsympathetic to appellant's ar-

gument that his letter to the Federal Circuit, carefully read, does not waive his Title VII claim. He contends that he did not actually disavow a retaliation claim as opposed to a discrimination claim. But retaliation under § 2000e–3(a) is explicitly characterized as a discrimination claim, and furthermore Smith specifically relied on § 2000e–16, which bans "discrimination based on race," in federal district court. It is quite clear, moreover, that the Federal Circuit's position in *Williams* would apply whether the complainant was asserting a simple discrimination claim under Title VII or a retaliation claim under the same Title. Smith was represented by counsel, therefore his response appears designed to circumvent the Federal Circuit's effort to prevent litigants from seeking, in this area of review of government personnel decision, "two bites at the apple." [3]

Nor are we persuaded by appellant's argument to the effect that his waiver in the Federal Circuit should not bind him because of the Supreme Court cases which guarantee a plaintiff a federal court to resolve Title VII claims regardless of prior litigation before state or federal administrative agencies. *See University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 3225, 92 L.Ed.2d 635 (1986); *Chandler v. Roudebush,* 425 U.S. 840, 846, 96 S.Ct. 1949, 1952, 48 L.Ed.2d 416 (1976); *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 47–48 & n. 8, 94 S.Ct. 1011, 1019 & n. 8, 39 L.Ed.2d 147 (1974). We are dealing with litigation in the Federal Circuit, and to permit Smith to pursue his Title VII claim here notwithstanding his waiver there would undermine the Federal Circuit's laudable efforts to prevent sequential forum shopping. Nothing in Title VII or its legislative purpose suggests the propriety of such cavalier treatment of a federal appellate court. *Cf. Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 478, 102 S.Ct. 1883, 1895, 72 L.Ed.2d 262 (1982) (plaintiff may not sue in district court under Title VII if he previously litigated his discrimination claim in state court, because of the full faith and credit clause).

Because appellant has waived his Title VII discrimination claim, we affirm the district court's judgment.

*It is so ordered.*

SILBERMAN, Circuit Judge, concurring:

I write separately because I believe we are obliged to reach the jurisdictional issue the majority avoids. Without subject matter jurisdiction over the case we would be without power or authority to consider the government's affirmative defense of waiver. *See* FED.R.CIV.P. 12(h)(3). The district court held that it lacked subject matter jurisdiction over appellant's claim since 5 U.S.C. § 8347(c) deprived it of judicial power to entertain appellant's claim for retirement disability benefits. *Smith v. Horner,* 664 F.Supp. 576, 577 (D.D.C.1987). "Due to that Congressionally imposed finality provision, this Court is not free to review those factual determinations even when they are sought to be presented in the context of a Title VII claim." *Smith v. Horner,* 645 F.Supp. 97, 100 (D.D.C.1986) (footnote omitted). The district court did not hold that without regard to section 8347(c) it lacked Article III jurisdiction, rather only absent authority or jurisdiction to review the facts upon which the denial of retirement disability was based (which

---

**3.** Smith could also be held precluded from litigating his Title VII claim because he "split" his two claims. Smith chose to litigate his disability claim in a court (the Federal Circuit) that could hear less than his entire claim instead of going to the district court, which was competent to entertain both his disability and Title VII claims. Claim preclusion does not turn on whether the first court chosen had jurisdiction as expansive as a later one. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 24 comment g, illustrations 13–15 (1982). All that matters is that plaintiff Smith had the *opportunity* to litigate both claims in a court of competent jurisdiction (here, the district court), but instead chose to split them. *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 382–86 & n. 3, 105 S.Ct. 1327, 1332–34 & n. 3, 84 L.Ed.2d 274 (1985); 18 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4412 (1981). And, moreover, a transfer to the district court, actually mentioned as an option in the Clerk's letter, could easily have brought Smith's disability claim from the Federal Circuit to the district court, where it could be combined with his Title VII discrimination claim. *See* 28 U.S.C. § 1631.

Congress had foreclosed), it could grant no relief in the case and thus it had no *remaining* Article III jurisdiction. I think the court's premise was correct—it lacked jurisdiction to review the factual disability determination—but I think it was mistaken in concluding that it lacked authority to grant *any* relief and thus it was not ousted of subject matter jurisdiction over the entire case.

Appellant contends that, since he alleges OPM's denial of retirement disability benefits was discriminatorily motivated, under Title VII law he is entitled to *de novo* review of that determination. He asserts that the very arbitrariness of OPM's decision—when compared with its treatment of other disability cases—is evidence of its discriminatory motive. And, therefore, it is impossible to judge fairly his discrimination claim without retrying his disability claim in federal district court. According to Smith, the district court was in error in perceiving section 8347(c) as even applicable to such a proceeding because, whatever limitations that section imposes on the Federal Circuit's review of disability claims, those jurisdictional restrictions do not apply when the disability claim is an integral part of a Title VII lawsuit.

Smith relies on Supreme Court cases holding that Title VII plaintiffs are entitled to *de novo* review of discrimination claims in federal courts even if a federal or state administrative agency has already adjudicated the same claims. *See University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 3225, 92 L.Ed.2d 635 (1986); *Chandler v. Roudebush,* 425 U.S. 840, 846, 96 S.Ct. 1949, 1952, 48 L.Ed.2d 416 (1976); *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 47–48 & n. 8, 94 S.Ct. 1011, 1019 & n. 8, 39 L.Ed.2d 147 (1974). Those cases do not involve, as in Smith's case, a collateral administrative proceeding not directed at a discrimination claim but which itself gives rise to a Title VII lawsuit. Still, the logic of those opinions suggests the outcome in such a proceeding would be the same. That is to say, for example, if a Title VII lawsuit were based on a claim that an employer discriminatorily denied disability benefits, depending on the strength of plaintiff's prima facie case, the district court might well be obliged to consider *de novo* the disability claim even though a state agency had determined that the employer was correct as a matter of state disability law.

Here, however, we encounter a separate federal statute, section 8347(c), that limits the scope of *federal* judicial review of the disability claim, and I think the district court was right in concluding that appellant could not circumvent that section's jurisdictional limitations merely by seeking review of the disability claim as part of his Title VII suit. Section 8347(c), after all, does not apply only to the Federal Circuit's review of MSPB orders; it forecloses review by any federal court of factual questions of disability, *Lindahl v. OPM,* 470 U.S. 768, 784, 105 S.Ct. 1620, 1629, 84 L.Ed. 2d 674 (1985). As the district court noted Congress' specific limitation or restriction of judicial review of these medical facts conflicts with (and preempts) the general grant of a trial *de novo* in Title VII cases. 645 F.Supp. at 100 n. 6. I think, unlike the district court, however, the two statutes can and should be reconciled and, therefore, the district court retained subject matter jurisdiction to provide limited review of denial of a retirement disability claim. *Lindahl* made clear that review of a disability determination is available (at least in the Federal Circuit) to determine whether "there has been a substantial departure from important procedural rights ... or some like error going to the heart of the administrative determination." 470 U.S. at 791, 105 S.Ct. at 1633. It would be hard to imagine an error more to the "heart" than a revealed discriminatory motive. So if it were not for Congress' jurisdictional allocation between the Federal Circuit's review of MSPB determinations and the federal district court's authority over Title VII cases, the Federal Circuit apparently would be permitted under *Lindahl* to consider procedural evidence of discrimination in the review of a disability determination (and as we note later may still be if no Title VII claim is made). To be sure, in *Brown v. GSA,* 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976), the Supreme Court stated that Title

VII is "the exclusive judicial remedy for claims of discrimination in federal employment," but that was in the context of holding that a government employee could not circumvent Title VII's procedural limitations by bringing an action against the government under 42 U.S.C. § 1981. It is not at all clear to me that that case forbids a government employee from even presenting procedural discriminatory evidence to the MSPB and the Federal Circuit as support for his contention that he was deprived of "important procedural rights."

In any event, it does seem clear that the discrimination allegations can form a separate Title VII claim in the federal district court since, but for a possible limitation caused by *Brown v. GSA*, it could be raised as a procedural defect pursuant to *Lindahl*. In other words, the Supreme Court's opinion in *Lindahl* holds that Congress, by passing 8347(c), did not *totally* foreclose judicial scrutiny of denials of retirement disability; it just foreclosed judicial inquiry of any kind into the underlying medical facts. In order to make a prima facie case, however, a plaintiff would have to allege and produce evidence other than merely a contention that an agency's denial of benefits was factually unsupported or even arbitrary and capricious. Separate evidence of discriminatory motive (other than based on the medical facts) would be necessary; otherwise any member of a protected class could circumvent section 8347(c) by seeking indirect review of a disability claim in a Title VII suit.[1]

If, independent of the medical facts in a disability case, a plaintiff could show a discriminatory motive on the part of the agency, it similarly would not be open to the government defendant to rebut the plaintiff's claim by pointing to the validity of the adjudication since then the court would—in order to determine whether the agency's defense was a pretext—be in the proscribed position of intruding into a factual determination that Congress wished

unreviewed. And, if the court concluded that the plaintiff had proved discriminatory motive, it would truly be irrelevant whether or not the disability determination could otherwise be defended. The proper disposition in such a case, where, as here, plaintiff has asked for any relief the court believes appropriate, would be an order directing a new disability determination free of discrimination. *See* 42 U.S.C. § 2000e–5(g) (1982) (wide powers given to district courts to make whole identifiable victim of discrimination); *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418–22, 95 S.Ct. 2362, 2372–73, 45 L.Ed.2d 280 (1975). That approach harmonizes the broad remedial reach of Title VII with the jurisdictional limitations of § 8347(c).

I do not think *Rosenfeld v. Department of the Army,* 769 F.2d 237 (4th Cir.1985), upon which appellant relies, supports his position. There the Fourth Circuit held section 8347(c) was no bar to the federal courts' examination of a plaintiff's mental health in an age discrimination suit. The Army, after the plaintiff Rosenfeld sought a transfer, required him to undergo a medical examination—which led to a determination that Rosenfeld not only should not be transferred, but because of "latent schizophrenia" should be retired. Rosenfeld unsuccessfully challenged the retirement order through the administrative process, but he did not seek direct judicial review, perhaps because the Army subsequently and inexplicably rehired him. 769 F.2d at 239 n. 1. Instead, Rosenfeld brought suit under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* (1982), claiming the transfer denial was discriminatory and seeking back pay for the period he had been involuntarily retired. The district court dismissed the claim because, by virtue of the "unreviewable" disability determination, Rosenfeld could not show he was qualified for employment and thus did not, according to the district court, present a prima facie case. The Fourth Circuit reversed and seems to

---

**1.** A prima facie case typically is presented by showing that the plaintiff is a minority or woman and that he or she was qualified for the benefit or position that the employer denied; then the burden shifts to the employer to adduce a nondiscriminatory reason for the denial.

*See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981). Here the plaintiff cannot claim he or she was "qualified" (entitled) for retirement disability because that is the very issue foreclosed by § 8347(c).

have drawn a reasonable and, to my view, appropriate distinction between the question whether Rosenfeld was entitled to disability benefits (which he was not seeking) and the analytically separate issue whether he was qualified for the job. *See* 769 F.2d at 242.[2] The former issue, not the latter, is foreclosed by section 8347(c), and the Army could not use the disability determination to foreclose judicial inquiry into Rosenfeld's qualifications. The same facts may have been relevant to both proceedings, but section 8347(c) only forecloses judicial examination of those facts for purpose of reviewing a disability determination.

The district court in this case was thus quite correct, in my view, in concluding that it could not, by reviewing the facts of the disability determination, provide the relief plaintiff specifically sought—the grant of disability benefits. But, as I have explained, I think the district court was in error in concluding no relief was possible; therefore, it retained subject matter jurisdiction. Nevertheless, it is unnecessary to remand because I agree with my colleagues the district court's judgment can be affirmed based on appellant's waiver.

---

**2.** At least one circuit has rejected the Fourth Circuit's premise that ADEA claimants have the same right to *de novo* review as that available under Title VII. *See Stillians v. Iowa,* 843 F.2d 276, 279–283, No. 87–1321, slip op. at 6–13 (8th Cir. Mar. 30, 1988).