[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13112

_____

ERIC M. ELLISON,

Plaintiff-Appellant,

*versus*

POSTMASTER GENERAL,

UNITED STATES POSTAL SERVICE,

Defendant-Appellee,

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:19-cv-726-MMH-PDB

_____

Before WILLIAM PRYOR, Chief Judge, LUCK, Circuit Judge, and MOORER,[*] District Judge.

PER CURIAM:

Eric M. Ellison appeals the district court's dismissal of Count III of his amended complaint, a claim for retaliation in violation of the Rehabilitation Act of 1973 and Title VII of the Civil Rights Act of 1964. The district court took judicial notice of relevant public documents that were from a federal agency administrative record then dismissed Ellison's retaliation claim for his failure to state a claim upon which relief can be granted.

Ellison argues the district court erred when it took judicial notice of the administrative records but did not treat the motion as one for summary judgment and allow him a reasonable opportunity to present all of the material that is pertinent to the motion. Ellison also argues the district court erred when it dismissed his retaliation claim for his failure to exhaust his administrative remedies because the alleged retaliation "was like or related to, or grew out of" acts that he detailed in a previously filed claim and was not required to file a new one. We find the district court did not err on either issue and affirm the judgment of the district court.

---

[*] The Honorable Terry F. Moorer, United States District Judge for the Southern District of Alabama, sitting by designation.

## I.      FACTUAL BACKGROUND

Ellison, an African-American male, began his employment in February 2000 as a mail handler with the United States Postal Service ("USPS") at one of its facilities in Jacksonville, Florida. In November 2003, Ellison sustained a lower-back injury that affected his ability to "perform repetitive motions such as bending, lifting, twisting, and turning," and as a result, he did not perform his duties as a mail handler while he received medical care and treatment for his injury. Ellison returned to his mail-handler duties in January 2004.

During Fall 2014, Patricia Becker, a Caucasian female, became Ellison's supervisor. In February 2016, Becker assigned Ellison a modified job position that reduced Ellison's daily work hours from eight (8) to two (2), which in turn reduced his daily pay. Ellison alleges Becker discriminated against him when she assigned him the modified job position because the decision was based on his race and disability (i.e., his lower back injury). Ellison alleges Becker did not reduce the hours of other mail carriers who either were not African American or did not have a disability.

In March 2016, Ellison contacted an Equal Employment Opportunity ("EEO") counselor about Becker's alleged discrimination then filed a formal charge of discrimination against USPS based on his race and disability. In July 2016, during the EEO's investigation of Ellison's claim and after Becker was informed of the allegations of the claim against her, Ellison alleges Becker retaliated against him "when she removed [him] from working at the [USPS] facility

without pay for approximately one year[,] proximately causing [him] to lose an annual salary of $60,000.00 plus overtime pay."

In response, Ellison brought this action against USPS on June 17, 2019. Ellison then amended his complaint on August 26, 2019, at the direction of the court. In the amended complaint, Ellison brought three claims under the Rehabilitation Act, 29 U.S.C. § 794, and Title VII, 42 U.S.C. § 2000e, against USPS: (1) disability discrimination (Count I), (2) race discrimination (Count II), and (3) retaliation (Count III). Ellison further alleged "[a]ll conditions precedent to this action, including the filing of a Formal Complaint of Discrimination and the issuance of a *Right to File Civil Action*," were met.

In response to the amended complaint, USPS filed a motion to dismiss for failure to state a claim. As to Counts I and II, USPS argued Ellison failed to plead facts to support his claims of disparate treatment. USPS also argued Ellison failed to allege an adverse employment action because the administrative record details USPS offered him modified job positions based on his self-reported physical limitations. As to Count III, USPS argued Ellison failed to exhaust his administrative remedies because the retaliation that he alleged occurred in July 2016 was a separate action from the retaliation for which he filed a formal complaint of discrimination. USPS included with its motion to dismiss records of the administrative proceedings that relate to Ellison's claims, such as the agency's decision and the supporting evidence. An internal USPS email details USPS returned Ellison to full duty, full time in July 2004, though he

denies he was made aware of it.  Ellison claimed in his complaint to the agency he was told by a USPS supervisor, on June 23, 2016, a manager wanted him to report to the Robot Operation and, if he did not, he would have to leave the building, which was a reprisal for his earlier, protected activity.

In the Equal Employment Opportunity Commission's ("EEOC") decision, it found Ellison reported on a Department of Labor, Office of Workers Compensation ("OWCP") CA-17 form, dated January 29, 2016, he was unable to: (a) continuously lift five pounds or intermittently lift more than fifteen pounds for one hour per day; (b) (i) stand or walk more than one hour per day, (ii) sit or engage in fine manipulation (including the use of a keyboard) more than two hours per day, (iii) bend/stoop fifteen minutes per day, (iv) push/pull more than thirty minutes per day, or (v) climb, kneel, reach above the shoulders or operate machinery.  As a result of Ellison's reported physical condition, USPS officials offered him, on February 2, 2016, a modified job that would allow him to perform two hours of work in the Robot Operation, which he refused. Ellison then provided another later-dated OWCP CA-17 form with similar physical restrictions to those that were indicated in the previous form, but it was noted he could perform many of the same functions for a period of between six and eight hours per day.  As a result of Ellison's newly reported physical condition, USPS officials offered him, on February 5, 2016, a modified job that would allow him to perform various tasks for up to eight hours at the Robot Operation.

Ellison filed his opposition to the motion to dismiss. Ellison argued his amended complaint was sufficiently well pled to survive dismissal under a Fed. R. Civ. P. 12(b)(6) standard because he alleged facts that established a *prima facie* case of unlawful discrimination. Ellison further argued he met the administrative exhaustion requirement for his retaliation claim because the investigation of his disability and race discrimination claims would have necessarily involved an inquiry into retaliation for reporting those claims.

In an amended response to the motion to dismiss, Ellison objected to the records of the administrative proceedings on the grounds that they were not referred to in the amended complaint, were not central to his claims, and were not accompanied by a custodial record of authenticity.

Following oral argument for the amended motion to dismiss, the district court denied the motion as to Counts I and II and denied without prejudice the motion as to Counts III, but the district court further allowed USPS to file a supplemental motion to dismiss as to Count III and set a briefing schedule.

The renewed motion to dismiss focused on an exception to the exhaustion requirement that this Court's predecessor recognized in *Gupta v. East Texas State University*, 654 F.2d 411 (5th Cir.

20-13112                Opinion of the Court                7

1981),[1] and this Court later reiterated in *Baker v. Buckeye Cellulose Corp.*, 865 F.2d 167 (11th Cir. 1988), generally referenced as the "*Gupta/Baker* exception." USPS argued the *Gupta/Baker* exception applied only when the alleged retaliation occurred while a case was pending in a district court such that the claim "grew out of" an earlier charge. USPS further argued the *Gupta/Baker* exception has been narrowly construed by this Court and judicial claims that rely on "new" or "discrete acts of discrimination" that "support a separate theory of discrimination" must be separately exhausted. USPS next argued the viability of the *Gupta/Baker* exception was unclear in light of the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), in which it was held the time for filing a charge of discrimination ran separately for each discrete discriminatory or retaliatory act. USPS noted the district courts in this circuit were split on the effect of *Morgan* on the precedential value of *Gupta* and *Baker*. USPS further argued this Court limited *Gupta* and *Baker* to their facts in *Duble v. FedEx Ground Package System, Inc.*, 572 F. App'x 889 (11th Cir. 2014) – specifically, the *Gupta/Baker* exception applies only in cases where the alleged retaliation occurred after a suit is properly filed in a district court.

---

[1] The Eleventh Circuit has adopted as binding precedent the decisions of the Fifth Circuit that were decided prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

Finally, USPS argued, even if this Court chose not to follow *Duble*, the *Gupta/Baker* exception did not apply to this case because Ellison's suspension was not "a reasonable outgrowth" of any of the conduct that was alleged in his administrative charges since it was different in "type . . . timing . . . and consequence." USPS argued "[i]t [was] unreasonable to expect the scope of an EEOC investigation convened for a temporary hours-reduction [*sic*] to cover a different discrete act . . . at a different time[ ] . . . without more." USPS concluded to excuse exhaustion in this case "would be tantamount to excusing all retaliation claims from exhaustion."

In support of the renewed motion to dismiss, USPS again attached records from the agency and the EEOC that document the administrative proceedings of Ellison's claims. The attached records included two of Ellison's agency charges of discrimination. In the informal charge from March 2016, Ellison stated Becker placed him in a job that required only two hours of daily work despite the medical opinion of his doctor, who said Ellison could work eight hours per day. Ellison said Becker told him to use annual leave to make up the remaining six hours of a full workday, while a white coworker who was injured outside of work was placed in a supervisory position to work full days. In June 2016, Ellison filed a formal charge with the EEOC in which he described the same discriminatory conduct. On June 26, 2016, Ellison requested an appointment with a Dispute Resolution Specialist and in a second informal charge, filed on July 1, 2016, Ellison alleged

Becker retaliated against him on June 23, 2016, when she allegedly ordered him, through intermediaries, to "report to the robot operation" or "leave the building."

The United States Postal Service National EEO Investigative Services Office ("EEO ISO") issued a partial acceptance and partial dismissal of Ellison's charges. In EEO ISO's explanation of its decision, it construed Ellison's second informal charge as an amendment to his formal charge since the conduct alleged in the second informal charge was "like or related" to the conduct alleged in the formal charge. The EEO ISO explained it accepted for investigation Ellison's charge that he was placed in a modified job position that allowed him to work two hours daily, even though he was able to work eight hours daily. The EEO ISO explained it declined to investigate Ellison's charge that he was made to use personal leave to make up the remaining six hours of a full workday because the EEOC was not the proper forum to bring the claim. The EEO ISO explained it declined to investigate Ellison's charge that he was ordered to "report to the robot operation" or "leave the building" because it was not an adverse employment action. However, an Administrative Law Judge ("ALJ") later reinstated Ellison's latter claim.

Ultimately, the ALJ decided in favor of USPS on Ellison's claims. The ALJ found, in light of Ellison's self-reported medical condition, the reduction in hours and reassignment to the robot operation was a reasonable accommodation and he was not entitled to the accommodation of his choice. The ALJ reasoned, since

Ellison was offered and rejected a reasonable accommodation, he was not subject to an adverse employment action.  Importantly, the ALJ did not acknowledge or address any claim by Ellison that Becker prevented him from working with pay for approximately one year, the basis of Count III of his amended complaint.

In response to the decision of the ALJ, on March 21, 2019, the EEO ISO issued a "Notice of Final Action" in which it decided to implement the decision of the ALJ and notified Ellison of his right to appeal the decision to the EEOC or file suit in a district court within ninety days.

Ellison filed his opposition to the renewed motion to dismiss and argued four of the documents that USPS filed in support of its motion – the EEO ISO's partial acceptance and partial dismissal of Ellison's charges, the ALJ order that reinstated Ellison's retaliation claim, the ALJ's final order that found in favor of USPS, and the EEO ISO's "Notice of Final Action,"– could not be considered and should be stricken because they were not referred to in the amended complaint, central to Ellison's claims, or accompanied by a custodial record of authenticity.  Ellison also argued he pled a *prima facie* case of retaliation.  As to the administrative exhaustion argument, Ellison argued he reported Becker's alleged retaliation in his second informal charge, which he argued was sufficient to satisfy the exhaustion requirement.

The district court granted the renewed motion to dismiss and dismissed Count III.  Procedurally, the district court explained it could consider the administrative records that were attached to

the renewed motion to dismiss without converting the motion into one for summary judgment because the Federal Rules of Evidence and this Court's precedent allowed a district court to judicially notice facts that are not subject to reasonable dispute, including public records. The district court noted Ellison did not argue the administrative records were not authentic in his response to the renewed motion to dismiss.

Substantively, the district court concluded Ellison failed to exhaust his retaliation claim. The district court rejected Ellison's argument that the allegation of retaliation by Becker that was before the agency, which was based on his reassignment to the robot operation, was sufficient to exhaust the retaliation claim in his amended complaint, which was based on Becker's decision to "remov[e] [him] from work for approximately one year," in July 2016, after he filed his formal charge with the EEOC. The district court noted the record showed the EEOC never investigated, or was made aware of, his suspension, Ellison had reason to know about it, and could have amended his formal EEOC complaint to include the suspension.

The district court noted USPS presented "an extensive argument" on the inapplicability of the *Gupta/Baker* exception and initially declined to address the argument because Ellison did not address the argument in his response to the renewed motion to dismiss. Yet, in a footnote, the district court described the cases and the lack of clarity in regard to their continued meaning and precedential value in light of *Morgan* and *Duble*. The district court

continued its analysis and surveyed the decisions of other districts courts of this circuit.  The district court then found the analysis in *Duble* applied to Ellison's retaliation claim and the claim was not properly exhausted "[b]ecause [he] opted not to amend his Formal Complaint to include a claim based upon his suspension, or raise this incident during the investigation."

Thereafter, Ellison and USPS filed a joint stipulation of dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) and purported to dismiss with prejudice Counts I and II but reserve Ellison's right to appeal the dismissal of Count III.  Pursuant to the joint stipulation of dismiss, the district court dismissed with prejudice Counts I and II and, in the same order, directed the Clerk of Court to enter judgment pursuant to Fed. R. Civ. P. 54 and dismiss Count III.  The Clerk of Court entered the judgment as directed.  Ellison then timely filed his notice of appeal.

This Court issued to the parties a jurisdictional question of whether their stipulation of dismissal was valid under Fed. R. Civ. P. 41(a)(1)(A).  In response, USPS conceded the stipulation of dismissal was not valid because Fed. R. Civ. P. 41(a)(1)(A) only allows parties to stipulate to the dismissal of an entire action, not individual claims, but argued the district court's order was valid and final under Fed. R. Civ. P. 41(a)(2).  Similarly, Ellison, through successor counsel, agreed the stipulation was invalid but argued the district court's order was still a final, appealable order because it purported to dismiss all of the claims in the action.  This Court determined it likely has jurisdiction.

## II.    STANDARD OF REVIEW

"[This Court] review[s] a district court's decision to take judicial notice of a fact for abuse of discretion." *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651 (11th Cir. 2020) (citing *Lodge v. Konduar Cap. Corp.*, 750 F.3d 1263, 1273 (11th Cir. 2014)).

"[This Court] reviews *de novo* the district court's grant of a motion to dismiss under [Federal Rule of Civil Procedure] 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Griffin v. Coca-Cola Refreshments USA, Inc.*, 989 F.3d 923, 931 (11th Cir. 2021) (internal quotation marks omitted). Likewise, "[w]hether the requirement of exhaustion of administrative remedies applies to a claim is a question of law that we review *de novo.*" *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1221 (11th Cir. 2008) (citing *Mason v. Cont'l Grp., Inc.*, 763 F.2d 1219, 1224-27 (11th Cir. 1985)).

## III.    DISCUSSION AND ANALYSIS

Preliminarily, the Court finds there is jurisdiction to consider this appeal. The parties concede in their stipulation, which they filed in an attempt to preserve the ability to appeal the dismissal of Count III, would not be valid under Fed. R. Civ. P. 41(a)(1)(A) as it dismisses fewer than all claims. *Cf. Perry v. Schumacher Grp. of La.*, 891 F.3d 954, 958 (11th Cir. 2018) ("There is no mention in the Rule of the option to stipulate dismissal of a portion of plaintiff's lawsuit—*e.g.*, a particular claim—while leaving a different part of

the lawsuit pending before the trial court.").  A request to dismiss an action requires a court order and dismissal by terms the court considers "proper" if Fed. R. Civ. P. 41(a)(1) does not apply.  FED. R. CIV. P. 41(a)(2).  *CSX Transp., Inc. v. City of Garden City*, 235 F.3d 1325, 1327 (11th Cir. 2000) ("We have held many times that a partial adjudication on the merits, followed by a voluntary dismissal without prejudice of a pending claim, does not effectively terminate the litigation and, therefore, does not satisfy the finality requirement of 28 U.S.C. § 1291.").

In the case at hand, the parties requested dismissal of the remaining claims with prejudice, which would functionally terminate the litigation.  Regardless, the trial court seemingly recognized this issue when it entered an order of dismissal of Counts I and II with an additional reference to Fed. R. Civ. P. 54 for final judgment on Count III.  It is clear after the Court resolved Count III with its adjudication on the motion to dismiss, that the parties resolved Counts I and II and requested dismissal with prejudice of those claims, while leaving the ability for Ellison to appeal the adjudication of Count III.  Therefore, the Court finds that a dismissal with prejudice of Counts I and II consistent with the parties' request is appropriate under Fed. R. Civ. P. 41(a)(2) accompanied by the Fed. R. Civ. P. 54(b) certification of partial judgment of Count III. Therefore, this Court has jurisdiction over this matter as to Count III.

Ellison presents two arguments on appeal: (1) the district court erred when it took judicial notice of the administrative

records but did not treat the motion as one for summary judgment and allow him a reasonable opportunity to present all of the material that is pertinent to the motion, and (2) the district court erred when it dismissed his retaliation claim for his failure to exhaust his administrative remedies because the alleged retaliation "was like or related to, or grew out of" acts that he detailed in a previously filed claim and he was not required to file a new one. Since the latter issue was decided based on the administrative records that were judicially noticed, the Court will first address the issue of judicial notice.

## A.    Judicial Notice

Ellison argues the district court erred when it "appl[ied] the summary judgment standard of review" and reviewed documents that went "beyond the four corners" of the amended complaint when it decided to dismiss Count III. Since the district court went "beyond the face of the [amended] complaint," Ellison argues this Court should treat the district court's decision as a grant of summary judgment, which required the court to provide notice to the parties and allow them to conduct discovery. Further, Ellison argues, if the district court applied the correct standard for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), he pled sufficient facts to state a *prima facie* claim for retaliation.

In response, USPS argues Ellison did not challenge the district court's decision to take judicial notice of the administrative records but challenged the court's decision to apply a summary judgment standard when it adjudicated Count III. USPS argues a

16                    Opinion of the Court                    20-13112

district court may, when it considers a motion to dismiss, "take judicial notice of relevant public documents" without converting it to a motion for summary judgment. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 (11th Cir. 1999).  Further, USPS argues, since the district court did not convert the motion to one for summary judgment, it was not obligated to provide notice to the parties and allow them to conduct discovery.

Ellison did not file a reply brief.

This Court has held a district court, at the motion to dismiss stage, may take judicial notice of relevant public documents.  *Id.*; *see also Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013) ("Although this matter is before the court on a motion to dismiss, we may take judicial notice of the court documents from the state eviction action."); *McCone v. Thorpe*, 828 F. App'x 697, 698 (11th Cir. 2020) ("A district court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment.").  "Under the doctrine of incorporation by reference, [a district court] may also consider documents attached to the motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity." *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in

particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

Likewise, the Federal Rules of Evidence provide, "[A] court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2). "[A] court may take judicial notice at any stage of the proceeding." FED. R. EVID. 201(d).

"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto." *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 n.12 (11th Cir. 2005) (internal quotation marks omitted) (quoting *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000)).

> Where exhaustion . . . is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record.

*Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008) (footnotes omitted); *Brady v. Postmaster General, U.S. Postal Serv.*, 521 F. App'x 914, 916 (11th Cir. 2013) (citing the same in the context of a motion

to dismiss for failure to exhaust administrative remedies in an action that was brought under Title VII, among other statutes).

Here, the district court did not abuse its discretion when it took judicial notice of the four documents that were filed with USPS's renewed motion to dismiss, despite objections by Ellison. It is clear a district court, at the motion to dismiss stage, may take judicial notice of relevant public documents. *See Avado Brands, Inc.*, 187 F.3d at 1280. Additionally, as the district court noted, Ellison has not argued against the authenticity of the documents. Finally, Ellison's description in his amended complaint of the events that preceded his suit includes "the filing of a formal charge, or complaint, of discrimination," and all of the "conditions precedent" to filing suit occurred, all of which events are described in the contested documents and are central to his claim. Doc. 12 ¶ 3; *see Hi-Tech Pharms., Inc.*, 810 F.3d at 1189.

Because it is well established a district court may take judicial notice of relevant public records when it decides a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and Ellison does not challenge the authenticity of the administrative records, we affirm the district court as to this issue.

### B.    Administrative Exhaustion

### i.    Whether the Argument was Abandoned

USPS argues Ellison failed to preserve the issue of whether he administratively exhausted his retaliation claim.

An appellant in this Court is required to include in her brief "a statement of the issues presented for review" and legal arguments as to her positions on those issues "with citations to the authorities and parts of the record on which the appellant relies." FED. R. APP. P. 28(a)(5), (a)(8)(A). When an appellant fails to list or otherwise state an issue in his brief, or fails to argue and cite authorities in support of an issue, he is deemed to have abandoned it. *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318-19 (11th Cir. 2012).

USPS' argument is unavailing. Ellison argues in his brief he sufficiently exhausted his retaliation claim because it grew out of the conduct described in his EEOC charge, and he cites to *Baker* and *Gupta* to support his argument. Therefore, the Court will address Ellison's challenge to the district court's order.[2]

ii.     **Whether Ellison Administratively Exhausted the Claim**

Ellison argues, assuming the district court did not err when it considered extrinsic evidence, Count III should not have been dismissed because the retaliation that he alleged in his amended

---

[2] Ellison did not raise this issue with the district court, but the district court ultimately described the *Gupta/Baker* exception and subsequent case law, and found "[u]pon due consideration, the [c]ourt is persuaded by the analysis in *Duble* and finds it entirely applicable here . . . . [T]he [c]ourt finds that any claim based on the suspension is not properly exhausted." Therefore, the district court expressly considered and decided the issue, and USPS does not argue Ellison failed to preserve the issue below.

complaint "was like or related to, or grew out of" the acts that he described in his second informal charge.

In response, USPS argues the retaliation that Ellison alleged to the EEOC "ha[d] nothing to do with the suspension-based retaliation claim that he later raised in [C]ount III of his amended complaint." USPS argues the retaliation that Ellison alleges in Count III is a "new act of alleged discrimination that occurred after he filed a formal complaint in his EEOC proceedings" and he was required to administratively exhaust his claim. USPS reiterates its arguments that it presented to the district court that the Supreme Court in *Morgan*, and this Court in *Duble*, have limited or extinguished the precedential value of *Baker* and *Gupta*.

The Court need not decide the effect of the Supreme Court's decision in *Morgan* on the precedential value of *Gupta* and *Baker* to decide this matter, since Ellison's alleged retaliation occurred while the EEOC investigation of his reported claims was pending.

"Under Title VII and the Rehabilitation Act, federal employees are required to initiate administrative review of any alleged discriminatory or retaliatory conduct with the appropriate agency . . . ." *Shiver v. Chertoff*, 549 F.3d 1342, 1344 (11th Cir. 2008). A "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (internal quotation marks omitted). This Court previously held a failure to expressly claim retaliation as part of an administrative charge of discrimination will not

defeat a later suit that alleges retaliation if the charged conduct reasonably led to the retaliatory conduct. *See id.* at 1280.

In *Duble*, we held a plaintiff failed to exhaust his administrative remedies for a claim of post-charge retaliation because the claim "relate[d] to a discrete act of alleged discrimination that occurred after he filed his initial charge." 572 F. App'x at 893 (citing *Morgan*, 536 U.S. at 114, 122 S. Ct at 2073). The plaintiff in *Duble* was diagnosed with multiple sclerosis and, as a result, was unable to perform certain job functions without accommodation. *Id.* at 890. The plaintiff ultimately filed an EEOC charge and claimed discrimination and retaliation because he said his employer failed to accommodate his disability *Id.* at 891. While the EEOC investigated the plaintiff's claims, he was fired "ostensibly for violating [his employer's] email policy." *Id.* at 893. After the EEOC's investigation concluded, the plaintiff filed suit and alleged, among other claims, his termination was retaliatory. *Id.* at 892. The Court noted *Baker* and *Gupta* established "[i]t is unnecessary for a plaintiff to exhaust administrative remedies prior to filing a judicial claim of retaliation if that claim grew out of an earlier charge," but held these cases were inapplicable. *Id.* at 892-93. The Court noted in both *Baker* and *Gupta*, the uncharged retaliatory conduct that the plaintiff alleged in his complaint occurred after the plaintiff filed suit in district court. *Id.* at 893. Conversely, the Court reasoned the plaintiff in *Duble* "had the opportunity to amend his EEOC charge or file a new charge relating to his termination" and chose not to, and that was sufficient to distinguish the earlier cases. *Id.*

The Court held the plaintiff was required to administratively exhaust his claim. *Id.*

The Court finds the facts here are consistent with those that directed the decision in *Duble*. Ellison's suspension began in July 2016 and ended after "approximately one year." Ellison received a notice of final action that informed him his claims would be dismissed and notified him of his right to sue in March 2019. Therefore, Ellison had nearly three years from the beginning and nearly two years from the end of his suspension to amend his EEOC charge to include his new retaliation claim. Moreover, Ellison was aware the administrative process remained available to him during the pendency of his initial charge.

## IV.    CONCLUSION

We find the district court did not err in considering the administrative records in conjunction with the motion to dismiss. Further, because the retaliatory act that Ellison alleges in Count III occurred while his administrative investigation remained pending, we also find the district court did not err when it dismissed the claim for his failure to exhaust his administrative remedies. The judgment of the district court is **AFFIRMED**.